IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-01188- WJM - CBS

UNITED STATES OF AMERICA,

     *Plaintiff,*

     v.

ROCKY MOUNTAIN PIPELINE SYSTEM LLC,
WESTERN CONVENIENCE STORES, INC.,
and OFFEN PETROLEUM, INC.

     *Defendants.*

---

## CONSENT DECREE

---

1

## Table of Contents

I. JURISDICTION AND VENUE ........................................................................... 4

II. DEFINITIONS .............................................................................................. 4

III. PARTIES BOUND ....................................................................................... 6

IV. CIVIL PENALTY ......................................................................................... 7

V. INJUNCTIVE RELIEF .................................................................................. 8

VI. STIPULATED PENALTIES ........................................................................... 12

VII. FORCE MAJEURE ...................................................................................... 15

VIII. DISPUTE RESOLUTION ............................................................................. 18

IX. EFFECT OF SETTLEMENT AND RESERVATION OF RIGHTS ...................... 21

X. COSTS ....................................................................................................... 23

XI. NOTICES .................................................................................................. 23

XII. RETENTION OF RECORDS ........................................................................ 25

XIII. EFFECTIVE DATE .................................................................................... 27

XIV. RETENTION OF JURISDICTION ................................................................ 27

XV. MODIFICATION ......................................................................................... 27

XVI. TERMINATION ......................................................................................... 28

XVII. PUBLIC PARTICIPATION ......................................................................... 29

XVIII. SIGNATORIES/SERVICE ......................................................................... 29

XIX. INTEGRATION ......................................................................................... 30

XX. FINAL JUDGMENT .................................................................................... 30

2

WHEREAS, Plaintiff, the United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), has filed a Complaint in this action against defendants Rocky Mountain Pipeline System LLC ("Rocky Mountain"), Western Convenience Stores, Inc. ("Western") and Offen Petroleum, Inc. ("Offen") alleging that they produced gasoline by blending natural gasoline and ethanol with previously certified gasoline without complying with multiple provisions of Sections 211(b), (c), (h), (k) and (o) of the Clean Air Act, as amended, 42 U.S.C. §§ 7545(b), (c), (h), (k) and (o), and regulations promulgated thereunder at 40 C.F.R. Parts 79 and 80, with respect to certain gasoline refined, distributed, and/or sold by them;

WHEREAS, Defendants do not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint;

WHEREAS, the United States and Defendants (together, the "Parties") agree, and the Court finds, that settlement of this action without further litigation is in the public interest, and that this Consent Decree is fair, reasonable, and an appropriate means of resolving this matter; and

WHEREAS, the Parties, without the necessity of trial regarding any issue of fact or law, and without any admission of liability by Defendants, consent to entry of this Consent Decree;

3

NOW, THEREFORE, WITH THE CONSENT OF THE PARTIES, IT IS HEREBY
ADJUDGED, ORDERED AND DECREED AS FOLLOWS:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action pursuant to
28 U.S.C. §§ 1331, 1345, and 1355, and Sections 205 and 211 of the Clean Air Act (the
"Act"), 42 U.S.C. §§ 7524 and 7545, and over the Parties.  Venue in this District is
proper pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a) and Section 205(b) of the
Act, 42 U.S.C. § 7524(b), because each Defendant resides in this judicial District and the
events giving rise to the claims asserted by Plaintiff in its complaint occurred in this
District.  Each Defendant waives any objections they may have to jurisdiction and venue
regarding this action and agree not to challenge the Court's continuing jurisdiction to
enforce or to take any other action to effectuate this Consent Decree.

## II. DEFINITIONS

2.      Terms used in this Consent Decree that are defined in the Act or in
regulations promulgated under the Act shall have the meanings assigned to them in the
Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms
set forth below are used in this Consent Decree, the following definitions shall apply:

a.      "Act" means the Clean Air Act, as amended, 42 U.S.C. §§ 7401 et
seq.

b.      "Consent Decree" or "Decree" means this Consent Decree.

4

c. "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal Holiday, the period shall run until the close of business of the next working day.

d. "Defendants" collectively means Rocky Mountain, Western and Offen, and each individually shall be a "Defendant."

e. "Effective Date" shall have the definition provided in Section XIII (Effective Date).

f. "EPA" means the United States Environmental Protection Agency.

g. "Fuels Regulations" means those regulations promulgated pursuant to Section 211 of the Act, which are found at 40 C.F.R. Parts 79 and 80, as may be amended.

h. "Interest" means interest at the rate specified for debts owed to departments or agencies of the United States pursuant to 28 U.S.C. § 1961.

i. "Paragraph" means a portion of this Consent Decree identified by an Arabic numeral ("subparagraph" by letter).

j. "Parties" means the United States and Defendants, and each shall be a "Party".

k. "Project Dollars" means the Defendants' expenditure and payments incurred or made in carrying out the project identified in Paragraph 14 of this Consent Decree to the extent that such expenditures or payments both: (a) comply with the

requirements in Paragraph 15 and Appendix A of this Consent Decree; and (b) constitute

Defendants' documented external costs for contractors, vendors, as well as equipment,

and its internal costs consisting of employee time, travel, and other out-of-pocket

expenses specifically attributable to the project.

      l.     "Section" means a portion of this Consent Decree identified by a

Roman numeral.

      m.     "United States" means the United States of America, acting on

behalf of EPA.

### III. PARTIES BOUND

    3.    This Consent Decree applies to and is binding upon the United States and

Defendants, and any successors and assigns.

    4.    Unless approved by the Parties in writing, any change in any Defendant's

ownership or corporate status shall in no way alter that Defendant's responsibilities under

this Consent Decree.  In any action by the United States to enforce this Consent Decree,

no Defendant shall raise as a defense the failure of any of its officers, directors,

employees, contractors, agents, successors or assigns to take any actions necessary to

comply with the provisions of this Consent Decree.

    5.    Except as otherwise expressly specified in this Consent Decree, the

obligations of Defendants under this Consent Decree are joint and several.  In the event

of insolvency or other failure of one of the Defendants to comply with the requirements
of this Consent Decree, the remaining Defendants shall complete all such requirements.

## IV. CIVIL PENALTY

6.    Within thirty (30) Days after entry of this Consent Decree, Defendants shall
pay to the United States a civil penalty in the amount of $2,500,000 in the manner
specified herein. Defendants shall pay the civil penalty by FedWire Electronic Funds
Transfer ("EFT") to the U.S. Department of Justice in accordance with written
instructions to be provided to Defendants, following lodging of the Consent Decree, by
the Financial Litigation Unit of the U.S. Attorney's Office for the District of Colorado.
At the time of payment, Defendants shall send a copy of the EFT authorization form and
the EFT transaction record, together with a transmittal letter, which shall (a) state that the
payment is for the civil penalty owed pursuant to the Consent Decree in United States v.
Rocky Mountain Pipeline, System LLC, et al., (b) reference the civil action number and
DOJ case number 90-5-2-1-09998, and (c) contain a statement showing the calculation of
any interest included in the civil penalty payment, to the United States in accordance with
Section XI (Notices); by email to acctsreceivable.CINWD@epa.gov; and by mail to:
EPA Cincinnati Finance Office, 26 Martin Luther King Drive, Cincinnati, Ohio 45268.

7.    Failure to timely pay the civil penalty shall subject Defendants to interest
accruing from the date payment is due until the date payment is made at the rate
prescribed by 28 U.S.C. § 1961, and shall render Defendants liable for all charges, costs,

7

fees, and penalties established by law for the benefit of a creditor or of the United States in securing payment.

8.     A single Defendant may undertake the obligation to pay the entire Civil Penalty, in which case, subject to Paragraph 42 below, that Defendant shall be individually obligated to pay the entire penalty.

9.     Payments made pursuant to this Section are civil penalties within the meaning of the Internal Revenue Code, 26 U.S.C. § 162(f), and are not tax deductible for purposes of federal law.

## V. INJUNCTIVE RELIEF

10.     Within thirty (30) Days after entry of this Consent Decree, Western shall acquire and retire 177,749 valid separated renewable identification numbers (RINs) with a D Code of 6. Western shall retire these RINs using Retire Code 70 - Enforcement Obligation in the EPA Moderated Transaction System, and shall notify the United States within five (5) Days from the date Western retires the RINs.

11.     Within thirty (30) Days after entry of this Consent Decree, Offen shall acquire and retire 44,174.73 valid separated renewable identification numbers (RINs) with a D Code of 6. Offen shall retire these RINs using Retire Code 70 - Enforcement Obligation in the EPA Moderated Transaction System, and shall notify the United States within five (5) Days from the date Offen retires the RINs.

12.     Defendants shall not produce gasoline by combining blendstocks or adding blendstocks to previously certified gasoline, unless the gasoline is produced in fixed vessel(s) or fixed tank(s) and in full compliance with the Fuels Regulations. In the event that any Defendant begins producing gasoline by combining blendstocks or adding blendstocks to previously certified gasoline in a fixed tank or vessel, that Defendant shall: (a) notify EPA of the location where the activity will take place; (b) prepare a comprehensive plan designed to assure compliance with the Fuels Regulations; and (c) provide EPA with written certification from a professional engineer stating that the engineer has reviewed the Defendant's compliance plan and determined that it is reasonably designed to assure compliance with the Fuels Regulations. The requirements of this Paragraph shall not apply to a Defendant that produces gasoline solely through the addition of ethanol to previously certified gasoline.

13.     The notification and certification required by Paragraph 12 shall be provided to EPA at least sixty (60) days before the Defendant begins producing gasoline.

14.     Rocky Mountain shall implement the Mitigation Project ("Project") described in Appendix A in compliance with the applicable schedules set forth in this Appendix. Rocky Mountain shall maintain, as required by Paragraph 49, and present to the United States upon request, all documents to substantiate the environmental benefits of the Project and the Project Dollars expended, and shall provide these documents to the

9

United States within thirty (30) Days of a request by the United States for such documents. Rocky Mountain shall use good faith efforts to secure as much environmental benefit as possible from the Project, consistent with the applicable requirements and limits of this Consent Decree. Any public statement, oral or written, in print, film, or other media, made by any Defendant making reference to the Mitigation Project under this Decree shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action, United States v. Rocky Mountain Pipeline System LLC, et al., taken on behalf of the U.S. Environmental Protection Agency under the Clean Air Act."

15.     Within sixty (60) Days following the completion of the Mitigation Project required under this Consent Decree, Rocky Mountain shall submit to the United States a report that documents the date that the Mitigation Project was completed, the results of implementing the Mitigation Project, including the emission reductions or other environmental benefits achieved, and the costs incurred by Rocky Mountain in implementing the Mitigation Project. With regard to the Mitigation Project, Rocky Mountain shall certify the truth and accuracy of each of the following:

a.     that all cost information provided to EPA in connection with EPA's approval of the Mitigation Project is complete and accurate;

b.     that, as of the date of executing this Decree, Rocky Mountain is not required to perform or develop any part of the Mitigation Project by any federal, state, or

10

local law or regulation and is not required to perform or develop any part of the Mitigation Project by agreement, grant, or as injunctive relief awarded in any other action in any forum;

c.    that the Mitigation Project is not a project that Rocky Mountain was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Decree;

d.    that Rocky Mountain has not received and will not receive credit for the Mitigation Project in any other enforcement action; and

e.    that Rocky Mountain will not receive any reimbursement for any portion of the Mitigation Project from any person, other than another Defendant in this action.

16.    Beginning six (6) months after the Effective Date of this Consent Decree, and continuing until the Mitigation Project required by this Consent Decree is completed in accordance with this Decree, Rocky Mountain shall provide the United States with semi-annual updates concerning the progress of, the environmental benefits and the costs incurred in implementing the Mitigation Project identified in Appendix A.

17.    Subject to the conditions of Section XII, all plans and reports prepared by the Defendants pursuant to the requirements of this section of the Consent Decree shall be publicly available without charge.  However, Defendants may assert that any part of these plans or reports are protected as Confidential Business Information ("CBI") under

11

40 C.F.R. Part 2. As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

## VI. STIPULATED PENALTIES

18.     If any Defendant violates or fails to timely comply with any of the requirements in Sections IV or V of this Consent Decree, that Defendant ("affected Defendant") shall pay stipulated civil penalties to the United States. Liability for Stipulated Penalties is not joint and several. Stipulated Penalties shall attach individually to each Defendant who fails to comply with any requirement under Sections IV or V of this Consent Decree which applies to that Defendant.

a.     Unless reduced by the United States in its unreviewable discretion, the amount of stipulated civil penalties for any violation or failure to comply with any requirements in Section IV of this Consent Decree (relating to Civil Penalty) shall be $1,000 per Day for each Day that the payment is late during the first fifteen (15) Days, and $3,500 per day thereafter.

b.     Unless reduced by the United States in its unreviewable discretion, the amount of stipulated civil penalties for any violation or failure to comply with any requirements in Section V of this Consent Decree (relating to Injunctive Relief) shall be as follows:

12

| Period of Failure To Comply | Penalty Per Violation Per Day |
|---|---|
| 1st through 15th day | $1,000 |
| 16th through 30th day | $5,000 |
| 31st day and beyond | $10,000 |

19.     Stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Separate stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.  Stipulated penalties shall accrue regardless of whether the United States has notified the affected Defendant(s) that a violation of this Consent Decree has occurred.

20.     Defendants shall pay stipulated penalties within thirty (30) Days of receiving the United States' written demand, unless the affected Defendant(s) invoke Dispute Resolution pursuant to Section VIII, in which case it/they shall pay stipulated penalties pursuant to Paragraphs 18 and 19 and 21.

21.     Stipulated penalties shall continue to accrue as provided in Paragraph 19, during any Dispute Resolution, but need not be paid until the following:

a.      If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, the affected Defendant(s) shall pay accrued penalties determined to be owed, together with Interest, to the United States within thirty (30) Days of the Effective Date of the agreement or the receipt of EPA's decision or order.

13

b.       If the dispute is appealed to the Court and the United States prevails in whole or in part, the affected Defendant(s) shall pay accrued penalties related to issues upon which the United States prevails and are determined by the Court to be owing, together with Interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in subparagraph c. below.

c.       If any Party appeals the District Court's decision, and the United States prevails in whole or in part, the affected Defendant(s) shall pay accrued penalties related to issues upon which the United States prevails and are determined to be owing, together with Interest, within fifteen (15) Days of receiving the final appellate court decision.

22.    The affected Defendant(s) shall pay the full amount of any stipulated penalties due in the manner set forth and with the confirmation notices required by Paragraph 6, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

23.    If any affected Defendant(s) fail to pay stipulated penalties according to the terms of this Consent Decree, the affected Defendant(s) shall be liable for interest on such penalties, as provided in 28 U.S.C. § 1961, accruing as of the date payment became due.

24.   Stipulated penalties paid pursuant to this Section are penalties within the meaning of Section 162(f) of the Internal Revenue Code, 26 U.S.C. § 162(f), and are not tax deductible expenditures for purposes of federal law.

25.   Nothing in this Section shall be construed as prohibiting, altering, or in any way limiting the rights of the United States to seek other remedies or sanctions available by virtue of Defendants' violation(s) of this Consent Decree or of the statutes or regulations upon which it is based.

## VII. FORCE MAJEURE

26.   "Force majeure", for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors, which delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation. The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force majeure" does not include Defendants' financial inability to perform any obligation under the Consent Decree.

27.   If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event,

the Defendant(s) experiencing the delay shall provide notice orally or by electronic or facsimile transmission to the Director of the Air Enforcement Division, U.S. Environmental Protection Agency, and the EPA attorney advisor assigned to this matter (currently Jeffrey A. Kodish), within forty-eight (48) hours of when that Defendant first knew that the event might cause a delay. Within five (5) days thereafter, such Defendant(s) shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment of public health, welfare or the environment. Defendant(s) shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendant(s) from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant(s) shall be deemed to know of any circumstances of which Defendants, any entity controlled by or Defendants' contractors knew or should have known.

16

28.    If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify the Defendant(s) asserting force majeure in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the affected Defendant(s) in writing of its decision

29.    If the Defendant(s) asserting force majeure elect to invoke the dispute resolution procedures set forth in Section VIII (Dispute Resolution), they shall do so no later than ten (10) Days after receipt of EPA's notice.  In any such proceeding, such Defendant(s) shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant(s) complied with the requirements of Paragraphs 27 and 28 of this Section, above.  If Defendant(s) carry this burden, the delay at issue shall be deemed

17

not to be a violation by Defendant(s) of the affected obligation of this Consent Decree identified to EPA and the Court.

## VIII. DISPUTE RESOLUTION

30.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. A Defendant's failure to seek resolution of a dispute under this Section shall preclude that Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendants arising under this Decree. The term "Defendant" and "Defendants," as used in this Section VIII, refer only to those Defendants involved in the Dispute Resolution.

31.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when one Party sends to the other a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of dispute shall not exceed twenty (20) Days from the date of the Notice of Dispute, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within fourteen (14) Days after the period of informal negotiation concludes, Defendant(s) invoke formal dispute resolution procedures as set forth below.

18

32.   <u>Formal Dispute Resolution</u>.  Defendant(s) shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendant(s).

33.   The United States shall serve its Statement of Position within thirty (30) Days of receipt of Defendants' Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant(s), unless Defendant(s) file a motion for judicial review of the dispute in accordance with the following Paragraph.

34.   Defendant(s) may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XI of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within fourteen (14) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested

19

and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

35.     The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

36.     Standard of Review. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 32 (Formal Dispute Resolution), Defendant(s) shall bear the burden of demonstrating that their position complies with this Consent Decree and that it is entitled to relief under applicable principles of law. The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law.

37.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 21. If Defendant(s) do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VI (Stipulated Penalties).

20

## IX. EFFECT OF SETTLEMENT AND RESERVATION OF RIGHTS

38.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.  The resolution of claims set forth in this Paragraph shall take effect upon the receipt by the United States of the payment required by Paragraph 6, and as to each Defendant is conditioned upon the full and satisfactory performance by that Defendant of its respective obligations under this Consent Decree.

39.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 40.

40.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 38.

41.    This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Each Defendant is responsible for achieving and maintaining compliance with all applicable federal, State, and local laws, regulations, and permits; and any Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that any Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, or with any other provisions of federal, State, or local laws, regulations, or permits.

42.    This Consent Decree does not limit or affect the rights of any Defendant against another Defendant or any person(s) not a party to this Consent Decree, nor does it limit the rights of those person(s) not party to this Consent Decree against any Defendant, except as otherwise provided by law. Defendants reserve all rights, including without limitation such rights of contribution and/or indemnity each may have, against each other and against each Defendant's predecessors and related parties.

43.    This Consent Decree does not limit or affect the rights of the United States against any person(s) not a party to this Consent Decree.

44.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any person(s) not party to this Consent Decree.

22

## X. Costs

45.    The Parties shall bear their own costs of this action, including attorneys'

fees, except that the United States shall be entitled to collect the costs (including

attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty

or any stipulated penalties due but not paid by Defendants.

## XI. Notices

46.    Unless otherwise provided herein, whenever notifications, submissions, or

communications are required by this Consent Decree, they shall be made in writing

addressed as follows:

As to the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC
20044-7611
Ref: 90-5-2-1-09998

Chief, Civil Division
Office of the United States Attorney
District of Colorado
1225 Seventeenth Street, Suite 700
Denver, CO  80202

Director
Air Enforcement Division (2242A)
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC  20460

23

Jeffrey A. Kodish
Attorney Advisor
U.S. Environmental Protection Agency
1595 Wynkoop Street (8MSU)
Denver, Colorado  80202

As to Rocky Mountain:

Lawrence J. Dreyfuss
Rocky Mountain Pipeline System LLC
333 Clay Street, Suite 1600
Houston, Texas  77002

Mike Kelly
Rocky Mountain Pipeline System LLC
333 Clay Street, Suite 1600
Houston, Texas  77002

Jean-Cyril Walker
Keller and Heckman, LLP
1001 G Street, NW
Suite 500W
Washington, DC  20001

As to Western

Alison Thayer
Temkin Wielga & Hardt LLP
1900 Wazee Street, Suite 303
Denver, Colorado  80202

Richard Wehrle
Western Convenience Stores, Inc.
9849 E. Easter Avenue
Centennial, Colorado  80112

24

As to Offen

Gwen Gallagher Stukey, President
William R. Gallagher, Managing Director
Offen Petroleum, Inc.
5201 York Street
Denver, Colorado 80216

Laura J. Riese
Davis Graham & Stubbs LLP
1550 Seventeenth Street, Suite 500
Denver, Colorado 80202

47. Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

48. Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XII. RETENTION OF RECORDS

49. Until five (5) years after the entry of this Consent Decree, each Defendant shall preserve and retain all records and documents now in its possession or control, or which come into its possession or control, that relate in any manner to Defendant's performance of the requirements of this Decree, regardless of any corporate records retention policy to the contrary. The records retention requirement imposed under this Consent Decree does not affect, modify or excuse any Defendant from compliance with

any other records retention requirements imposed by federal, state or local laws or regulations.

50.     After the conclusion of the document retention period in Paragraph 49, Defendants shall notify the United States at least ninety (90) Days prior to the destruction of any such records or documents, and, upon request by the United States, Defendants shall deliver any such records or documents to the United States. Defendants may assert that certain documents, records, or other information are protected as CBI, or privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendants assert such a privilege, they shall provide the United States with the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of the author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted. However, no documents, reports, or other information created or generated pursuant to the requirements of this or any other Consent Decree with the United States shall be withheld on the grounds that they are privileged. If a claim of privilege applies only to a portion of a document, the document shall be provided to the United States in redacted form to mask the privileged information only. Each Defendant shall retain all records and documents that it claims to be privileged until the United States has had a

reasonable opportunity to dispute the privilege claim before this Court and any such dispute has been resolved in Defendant's favor.

## XIII. Effective Date

51.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court.

## XIV. Retention of Jurisdiction

52.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree, pursuant to Section VIII (Dispute Resolution), or effectuating or enforcing compliance with the terms of this decree.

## XV. Modification

53.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

54.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section VIII (Dispute Resolution), provided, however, that, instead of the burden of proof provided in Paragraph 36, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVI. TERMINATION

55.     Defendants may, at any time after five (5) years from the Effective Date, serve upon the United States, together with all necessary supporting documentation, a Request for Termination of this Consent Decree. In seeking such consent, Defendants shall demonstrate that they have satisfactorily completed their obligations under this Decree, including payment of the civil penalty under Section IV, completion of the Injunctive Relief under Section V, and payment of any outstanding stipulated penalties under Section VI.

56.     Following receipt by the United States of a Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether the Defendants have satisfactorily complied with the requirements of this Consent Decree. If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree. Provided however that all claims between Defendants and their predecessors and their related parties are reserved, including without limitation contribution and/or indemnity claims.

57.     If the United States does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section VIII. Defendants shall not invoke Dispute Resolution for any dispute regarding termination, however, until at least one hundred and twenty (120) days after service of its Request for Termination.

## XVII. Public Participation

58.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent decree is inappropriate, improper or inadequate. Defendants consent to the entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XVIII. Signatories/Service

59.     Each undersigned representative of each Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

60.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree, including the Complaint, and to waive the formal service requirements set forth in Rules 4 and 5 of the

Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. The Parties agree that Defendants need not file an answer to the Complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XIX. INTEGRATION

61.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supercedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XX. FINAL JUDGMENT

62.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendants.

30

JUDGMENT IS HEREBY ENTERED IN ACCORDANCE WITH THIS
CONSENT DECREE THIS 12 DAY OF July, 2011.

UNITED STATES DISTRICT JUDGE
District of Colorado

31

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Rocky Mountain Pipeline System LLC, *et al.* relating to alleged violations of the Fuels Regulations.

FOR THE UNITED STATES OF AMERICA:

IGNACIA S. MORENO
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division
Office of the Assistant Attorney General
950 Pennsylvania Avenue, N.W.
Room 2143
Washington, D.C. 20530

JOHN N. MOSCATO
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
1961 Stout Street, 8th Floor
Denver, CO 80294
Telephone: (303) 844-1380
Facsimile: (303) 844-1350
Email: John.Moscato@usdoj.gov

32

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v. Rocky Mountain Pipeline System LLC, *et al.*</u> relating to alleged violations of the Fuels Regulations.

**U.S. ENVIRONMENTAL PROTECTION AGENCY**

CYNTHIA GILES
Assistant Administrator
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C.  20460

ADAM M. KUSHNER
Director, Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C.  20460

PHILLIP A. BROOKS
Director, Air Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Mail Code 2422A
Washington, D.C.  20460

33

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Rocky Mountain Pipeline System LLC, *et al.* relating to alleged violations of the Fuels Regulations.

JEFFREY A. KODISH
Attorney Advisor
Air Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1595 Wynkoop Street (8MSU)
Denver, Colorado 80202

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v. Rocky Mountain Pipeline System LLC, *et al.*</u> relating to alleged violations of the Fuels Regulations.

**FOR ROCKY MOUNTAIN PIPELINE SYSTEM LLC**

LAWRENCE J. DREYFUSS
Vice President and General Counsel – Commercial and Litigation
Rocky Mountain Pipeline System LLC
333 Clay Street, Suite 1600
Houston, Texas  77002

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v. Rocky Mountain Pipeline System LLC, *et al.*</u> relating to alleged violations of the Fuels Regulations.

**FOR WESTERN CONVENIENCE STORES, INC.:**

HOSSEIN TARAGHI
Western Convenience Stores, Inc.
9849 E. Easter Avenue
Centennial, CO  80112

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v. Rocky Mountain Pipeline System LLC, <em>et al.</em></u> relating to alleged violations of the Fuels Regulations.

**FOR OFFEN PETROLEUM, INC.:**

Gwen Gallagher Stukey, President
William R. Gallagher, Managing Director
Offen Petroleum, Inc.
5201 York Street
Denver, CO  80216

37

**Appendix A**

**Geodesic Dome Emissions Mitigation Project**

Rocky Mountain Pipeline System, LLC (Rocky Mountain) shall construct a geodesic dome on gasoline tank at its Dupont Terminal in Commerce City, Colorado. The geodesic dome shall be designed to reduce emission of volatile organic compounds ("VOCs") and other hazardous air pollutants from Tank 17.9. The installation and operation of the geodesic dome shall result in emissions reductions from Tank 17.9 by, at a minimum, approximately 8.58 tons VOCs per year. Rocky Mountain estimates that it will cost about $200,000 to construct the geodesic dome on gasoline Tank 17.9 at its Dupont Terminal.

Within sixty (60) days of the Effective Date of the Consent Decree, Rocky Mountain shall submit a detailed description of a work plan and implementation schedule to EPA for review and approval. The work plan shall include a description of actions that Rocky Mountain will take to minimize any impacts on gasoline supplies to the areas serviced by Tank 17.9 during construction of the geodesic dome. The approved work plan and implementation schedule are incorporated by reference herein and are enforceable as a part of this Consent Decree.

Rocky Mountain shall promptly inform the United States, in writing, if it encounters any significant problems with the construction or operation of the geodesic dome that could impact public health or the environment. The notification shall be provided to EPA no less than fourteen (14) days after Rocky Mountain first learns of the problem, and shall include a statement of how Rocky Mountain intends to address each problem.